2009 ME 9

**William GAETH**

v.

**Daniel B. DEACON.**

Supreme Judicial Court of Maine.

Argued: April 8, 2008.
Decided: Feb. 3, 2009.

Peter J. DeTroy, Esq., Russell B. Pierce, Jr., Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for Daniel Deacon.

Benjamin J. Smith, Esq., Sumner H. Lipman, Esq., Keith Varner, Esq. (orally), Lipman, Katz & McKee, P.A., Augusta, ME, for William Gaeth.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1]   Daniel B. Deacon appeals from an order entered in the Superior Court (Lincoln County, *Cole, J.*) denying his motion for relief from a default judgment brought pursuant to M.R. Civ. P. 60(b). The judgment, in favor of William Gaeth, is based on an assault committed in 2002 by Deacon against Gaeth in Waterville. Deacon contends that the default judgment is void because Lincoln County is not the proper venue for the action pursuant to 14 M.R.S. § 501 (2008), and therefore service by publication in the *Lincoln County News* was improper pursuant to M.R. Civ. P. 4(g). Deacon further contends that, even if such service was in compliance with the statute and the Rule, the service used in this case

was not reasonably calculated to give him notice of this lawsuit, did not give him notice, and did not afford him due process.[1] We agree with Deacon that the service used did not comport with his constitutional right to due process, and that the court therefore improperly denied his motion for relief from judgment. Accordingly, we vacate the judgment.

## I. CASE HISTORY

[¶ 2]  On April 7, 2004, Gaeth's attorney sent Deacon a letter addressed to him in Cambridge, Massachusetts. The letter stated as follows:

> This is to advise you that I represent William Gaeth who was injured when you struck him on October 6, 2002 in Waterville, Maine. If you have insurance coverage, could you please let us know. If you do not, could you please let us know if an attorney represents you.

Deacon received the letter and responded by letter dated April 19, 2004, in which he replied, "I do not know of any insurance coverage. I do not have an attorney, nor can I afford to retain one."

[¶ 3]  On June 22, 2004, Gaeth, a resident of Lincoln County, filed a complaint in the Superior Court in that county, alleging that on October 6, 2002, while Gaeth and Deacon were students at Colby College, Deacon consumed excessive amounts of alcohol and then struck Gaeth in the face with his fist. As a result, Gaeth's nose was fractured. The complaint further alleged that Gaeth incurred and would continue to incur medical bills in excess of $8000, pain and suffering, and disability. Gaeth requested compensatory and punitive damages.

[¶ 4]  On September 20, 2004, Gaeth filed a motion pursuant to M.R. Civ. P. 4(g) for service by publication. In the motion, Gaeth asserted the following: prior to March 29, 2004, Gaeth conducted a computer search to find information on Deacon on autotrackxp.com, a public records database, and a telephone number search to find Deacon on msn.com, neither of which was successful; in March of 2004, Gaeth contacted the Colby College Alumni Association and was given an address for Deacon in Cambridge, Massachusetts; Gaeth received a letter from Deacon dated April 19, 2004, with a return address in Cambridge, Massachusetts; in July of 2004, Gaeth sent a Middlesex County sheriff to Cambridge, Massachusetts, to serve the complaint and summons, but the sheriff was unsuccessful in his numerous attempts to effect service at the Cambridge address because he was unable to gain entry into the apartment building, the main door being locked; on July 29, 2004, Gaeth repeated the computer searches on autotrackxp.com and msn.com, but was unsuccessful in locating Deacon; and on August 4, 2004, Gaeth's counsel received a response to the inquiry made to the post office in Cambridge, Massachusetts, which indicated that Deacon's address was in Cambridge, Massachusetts.

[¶ 5]  The court granted the motion for service by publication stating that "service cannot with due diligence be made on Defendant Daniel Deacon by any other prescribed method." The court ordered service by publication "in the *Lincoln County News* for a period of 3 successive weeks." The order also provided that Gaeth's counsel would mail Deacon a copy of the order as published.

---

1.  Deacon also contends that the court erred by denying his motion for relief from judgment on the basis of excusable neglect. Because we vacate the court's decision on other grounds, we need not reach this issue.

[¶ 6]   As ordered, a notice was published in the *Lincoln County News,* a weekly newspaper, once a week for three successive weeks beginning on October 7, 2004. Gaeth sent the court's order and the notice of publication of the complaint and summons by ordinary mail to Deacon's last known address in Cambridge, Massachusetts.   Both were returned with the stamp "return to sender." One of the envelopes had "no forward order on file" written on it.

[¶ 7]   On January 12, 2005, the clerk entered a default judgment against Deacon for failure to file a responsive pleading. *See* M.R. Civ. P. 55(a).   On April 14, 2005, Gaeth requested a hearing on damages, *see* M.R. Civ. P. 55(b)(2), which was held on September 1, 2005.   At the hearing, Gaeth was the only witness to testify regarding his damages.   He testified that he had incurred $8346 in medical bills to date, he would need an additional surgery costing approximately $10,000, his mother lost income totaling $584 as a result of his injury, and he incurred mileage expenses of $219 to and from medical appointments, for a total of $19,149 in special damages. Gaeth asked for a total recovery of $100,000, which includes $25,000 in punitive damages based on the viciousness of Deacon's unprovoked attack.   The court found the request reasonable and awarded Gaeth $75,000 in compensatory damages, and $25,000 in punitive damages, plus interest and costs.

[¶ 8]   On September 28, 2005, the clerk issued a writ of execution.   In November of 2005, Colby's attorney contacted Deacon by letter after the college had been served a subpoena requesting "any and all files and/or documents in [Colby's] possession regarding Daniel Deacon."   The college had learned of Deacon's new address in Medford, Massachusetts, when Deacon's mother provided it to the Alumni Relations Office in December of 2004, three months after service by publication was accomplished.

[¶ 9]   Soon after receiving the letter from Colby's attorney, Deacon retained counsel in Maine, and on November 22, 2005, he filed a motion for relief from judgment pursuant to M.R. Civ. P. 60(b), and an answer to the original complaint. The parties then filed several unopposed motions for enlargement of time and various motions regarding discovery.   Deacon filed a second motion for relief from judgment asserting improper venue on May 9, 2006.

[¶ 10]   The court denied the motions for relief from judgment.   The court found that venue was proper, that the judgment was not void, and that Deacon had not demonstrated either excusable neglect or a meritorious defense to justify setting aside the default judgment.   Deacon then filed this appeal.

## II.   DISCUSSION

### A.   Compliance with 14 M.R.S. § 501 and M.R. Civ. P. 4

[¶ 11]   Deacon contends that the court erred by denying his motion for relief from judgment pursuant to M.R. Civ. P. 60(b)(4) because the default judgment against him is void and is therefore subject to collateral attack.   Deacon argues that the judgment is void because he did not receive notice and because service was not proper, and that without proper service, the court did not have personal jurisdiction over him.

[¶ 12]   We review the trial court's original decision granting a motion for service by publication for an abuse of discretion. *Phillips v. Johnson,* 2003 ME 127, ¶ 22, 834 A.2d 938, 945.   We review any factual findings regarding the court's decision to grant a motion for service by

publication for clear error, *see id.*, but whether the commencement of an action and the service of process comport with M.R. Civ. P. 4 is a question of law that we review de novo. *Brown v. Thaler,* 2005 ME 75, ¶ 8, 880 A.2d 1113, 1115.

[¶ 13] Deacon contends that venue was improper pursuant to 14 M.R.S. § 501 because the action should have been brought in Kennebec County, where the acts giving rise to the cause of action occurred, rather than in Lincoln County, where Gaeth resides. Deacon argues that because venue was improper, service by publication in a Lincoln County publication was invalid and not effective, and the default judgment is void.

[¶ 14] Title 14 M.R.S. § 501 provides:

Personal and transitory actions, except process of foreign attachment and except as provided in this chapter, shall be brought, when the parties live in the State, in the county where any plaintiff or defendant lives; and when no plaintiff lives in the State, in the county where any defendant lives; or in either case any such action may be brought in the county where the cause of action took place. Improper venue may be raised by the defendant by motion or by answer, and if it is established that the action was brought in the wrong county, it shall be dismissed and the defendant allowed double costs.

[¶ 15] We have stated on many occasions that the primary purpose in interpreting a statute is to give effect to the legislature's intent. *See, e.g., Me. Ass'n of Health Plans v. Superintendent of Ins.,* 2007 ME 69, ¶ 34, 923 A.2d 918, 928. If a statute is unambiguous, we interpret it according to its plain language. *Id.* "A statute is ambiguous if it is reasonably susceptible of different interpretations. In other words, if a statute can reasonably be interpreted in more than one way and

comport with the actual language of the statute, an ambiguity exists." *Id.* 35, 923 A.2d at 928 (quotation marks and internal citations omitted).

[¶ 16] Deacon urges us, as he did the Superior Court, to construe section 501 to require that when a plaintiff who is a Maine resident brings a complaint against an out-of-state defendant, the plaintiff must file the complaint in the county where the cause of action arose. Deacon argues that the other two options set out in the statute as to where an action can be brought—the county where any plaintiff lives, or the county where any defendant lives—do not apply in this case because only the plaintiff is a Maine resident. The only proper venue, Deacon contends, is Kennebec, the county where the incident leading to the cause of action took place. We disagree.

[¶ 17] The language of the statute allows a plaintiff to file a complaint in the county where the cause of action took place, but does not *require* it. The statutory use of the word "may" is permissive, not restrictive. The Superior Court correctly concluded that the statute allows for a complaint to be filed *either* in the county where the plaintiff resides, in this case Lincoln, *or* the county where the cause of action arose, in this case Kennebec. Although Deacon urges us to interpret the word "parties" in section 501 to mean "both parties," the Superior Court properly construed the word "parties" to mean "either party."

[¶ 18] The statute sets out the venue for all personal or transitory actions, and provides direction on where a plaintiff should file a complaint when the defendant does not reside in Maine. The Superior Court's interpretation and application of the statute is consistent with its language, and the court did not err by determining

that Lincoln County was a proper venue, even if the action could also have been commenced in Kennebec County.

[¶ 19] Rule 4(g) of the Maine Rules of Civil Procedure provides:

**(g) Service by Publication.**

(1) *When Service May Be Made.* The court, on motion upon a showing that service cannot with due diligence be made by another prescribed method, shall order service by publication in an action described in subdivision (f) of this rule, unless a statute provides another method of notice, or when the person to be served is one described in subdivision (e) of this rule.

(2) *Contents of Order.* An order for service by publication shall include (i) a brief statement of the object of the action; (ii) if the action may affect any property or credits of the defendant described in subdivision (f) of this rule, a description of any such property or credits; and (iii) the substance of the summons prescribed by subdivision (a) of this rule. The order shall also direct its publication once a week for 3 consecutive weeks in a designated newspaper of general circulation *in the county where the action is pending;* and the order shall also direct the mailing to the defendant, if the defendant's address is known, of a copy of the order as published.

(Emphasis added.) Because the statute allowed Gaeth to file the action in Lincoln County, service by publication in the *Lincoln County News* complied with the language of Rule 4(g).

**B. Constitutional Challenge**

[¶ 20] Deacon also contends, however, that even if there has been technical compliance with the provisions of section 501 and Rule 4(g), he has not been afforded due process pursuant to the United States and Maine Constitutions.[2] Service of process serves the dual purposes of giving adequate notice of the pendency of an action, and providing the court with personal jurisdiction over the party properly served. *Brown,* 2005 ME 75, ¶ 10, 880 A.2d at 1116. "Under Maine law and federal constitutional dictates of due process, service of process effected in a manner most reasonably calculated to apprise the defendant in fact of the proceeding is necessary to insure that the court in which an action is initiated gains personal jurisdiction over the parties." *Lewien v. Cohen,* 432 A.2d 800, 804–05 (Me.1981) (citing, inter alia, *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "Any judgment by a court lacking personal jurisdiction over a party is void." *Brown,* 2005 ME 75, ¶ 10, 880 A.2d at 1116 (citing *Lewien,* 432 A.2d at 805).

[¶ 21] Deacon asserts that he received no actual notice of the lawsuit pending against him and there is nothing in the record to show otherwise. Receipt of actual notice is not constitutionally mandated, but an adequate attempt at actual notice is required. *See Dusenbery v. United States,* 534 U.S. 161, 169–70, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002).[3]

**2.** The United States and Maine Constitutions provide that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6–A.

**3.** The adequacy of the notice is reviewed from the time that the notice is given, and not after the fact. "[T]he failure of notice in a specific case does not establish the inadequacy of the attempted notice; in that sense, the constitutionality of a particular procedure for notice is assessed *ex ante,* rather than *post hoc.*" *Jones v. Flowers,* 547 U.S. 220, 231, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

[¶ 22] Rule 4 of the Maine Rules of Civil Procedure provides, "The court, on motion upon a showing that service cannot with due diligence be made by another prescribed method, shall order service by publication." M.R. Civ. P. 4(g)(1). The Supreme Court has stated that "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane,* 339 U.S. at 315, 70 S.Ct. 652.

[¶ 23] Both the United States and Maine Constitutions require that, as a basic element of due process, any defendant against whom suit is commenced is entitled to notice reasonably calculated to give actual notice, and a reasonable opportunity to respond to the action. *Michaud v. City of Bangor,* 159 Me. 491, 494, 196 A.2d 106, 108 (1963). Proper service of process gives the defendant adequate notice of suit as required by due process. *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914); *Brown,* 2005 ME 75, ¶ 10, 880 A.2d at 1116. The ultimate question when due process and the adequacy of notice of suit are at issue is whether the notice or attempted notice was reasonably calculated to give a defendant notice of the pendency of the action, not whether the technical requirements of a rule governing service of process were met. *See Schroeder v. City of New York,* 371 U.S. 208, 212–13, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (stating that, as a general rule, notice by publication is insufficient for a party whose name and address are "very easily ascertainable").

[¶ 24] We agree with Deacon that service by publication in the *Lincoln County News* was insufficient. Deacon's only connection with Maine is his previous attendance at Colby, and service by notice in the *Lincoln County News,* a weekly newspaper published in Lincoln County, would be highly unlikely to give him actual notice of the lawsuit. The Supreme Court has stated that "[c]hance alone brings a person's attention to an advertisement in small type inserted in the back pages of a newspaper and that notice by publication is adequate only where it is not reasonably possible or practicable to give more adequate warning." *Jones v. Flowers,* 547 U.S. 220, 237, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) (quotation marks and internal citations omitted).

[¶ 25] The practice regarding service by publication as a means to achieve notice of the commencement of a suit developed at a time when newspapers were the only means of print mass communication, and when newspapers were more widely and intensely read than is now the case. Today, much has changed in the way of life that gave rise to the rules and practices regarding service by publication. *See, e.g., Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1017 (9th Cir.2002) (affirming the U.S. district court's order allowing service of process by e-mail to a defendant living abroad, stating that courts "cannot be blind to changes and advances in technology. No longer do we live in a world where communications are conducted solely by mail carried by fast sailing clipper ... ships." (quotation marks omitted)). Fewer people now read print newspapers, and those who do are likely to read them less intensely because an increasingly greater portion of the population obtains more of its information through television, the Internet, and other electronic media. Further, the population is more mobile, making it less likely that a defendant's relatives, friends, or acquaintances may see a notice by publication in a newspaper, report it to the defendant, and thereby give the defendant actual knowledge of the

pendency of a suit.[4]

[¶ 26] Because service by publication has become less likely to achieve actual notice of a lawsuit, it is also less likely to meet the requirements of due process. *See Grannis*, 234 U.S. at 394, 34 S.Ct. 779.[5] Today, just as one hundred years ago, notice of a suit must be given in the manner "most reasonably calculated to apprise the defendant" of the pendency of a suit. *Lewien*, 432 A.2d at 804–05. Accordingly, because of the recent societal changes, service by publication in a newspaper is now a last resort that a party should attempt only when it has exhausted other means more likely to achieve notice. *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 4.13 at 98–100 (2d ed.1970); *see also* M.R. Civ. P. 4(g)(1) (mandating that courts may order service by publication only upon motion showing that "*service cannot with due diligence be made* by another prescribed method" (emphasis added)). "When a party's identity and location are reasonably ascertainable, notice by publication is not reasonably calculated to provide actual notice of the

pending proceeding." *Phillips*, 2003 ME 127, ¶ 27 n. 12, 834 A.2d at 946 (quotation marks omitted). Thus, "service by publication should occur only when notice cannot be accomplished by other means." *Id.* ¶ 27, 834 A.2d at 946.

[¶ 27] The purpose of the rule regarding service is to achieve due process by giving sufficient notice of civil actions. In this case, service by publication was made in a small weekly newspaper circulating primarily in Lincoln County. Deacon's only known contact with Maine was his attendance at Colby College, located in Kennebec County. He had no present contact with Maine, no present or past connections to Lincoln County, and his last known residence was in Cambridge, Massachusetts. It is difficult to conclude that in those circumstances, notice in a weekly newspaper published in Lincoln County was reasonably calculated to give Deacon actual notice of the lawsuit.[6] *See Mullane*, 339 U.S. at 315, 70 S.Ct. 652; *Lewien*, 432 A.2d at 804–05.

[¶ 28] Recently, the United States District Court for the District of New Jersey

---

4. That can still occur today. *See Phillips v. Johnson*, 2003 ME 127, ¶ 25, 834 A.2d 938, 945–46 (notice of service by publication was seen by the defendants' mother and communicated to them, giving actual notice of the pendency of a suit). *Phillips* differs from Deacon's case, however, because the defendants in *Phillips* had a strong connection to the area where the notice was published. *Phillips* involved an action to quiet and establish title to a family-owned island on a lake in Glenwood Plantation, a small town located just over thirty miles from Houlton in Aroostook County. *See id.* ¶ 3, 834 A.2d at 940. Notice was published once a week for three consecutive weeks in the *Houlton Pioneer Times* in Aroostook County. *Id.* ¶ 5, 834 A.2d at 941. Although the facts do not make it clear that the defendants and their parents resided in or around Houlton, the family connection to the area, and the fact that the defendants' claimed ownership to property located in the area, support that notice pub-

lished in the *Houlton Pioneer Times* was reasonably calculated to give the defendants actual notice.

5. *Grannis* involved land transactions and service of suit by publication that occurred in the 1890s. *Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914).

6. If the action had been brought in Kennebec County, which was permissible pursuant to 14 M.R.S. § 501 (2008), and publication was ordered in a Kennebec County publication in or around the Waterville area, where Colby is located, it may have been more likely that the notice could have been found to be reasonably calculated to give Deacon actual notice. Deacon had previously attended Colby, and therefore had at least *some* connection to Kennebec County. Deacon, however, had *no* known connection to Lincoln County. *Compare Phillips*, 2003 ME 127, ¶% 3, ¶ 25, 834 A.2d 940, 945–46.

faced a similar situation addressing a motion for service by publication in New Jersey with a purpose to accomplish service of process on a defendant whose last known address was in Alabama. *The Prudential Ins. Co. of Am. v. Holladay,* 2008 WL 1925293, 2008 U.S. Dist. LEXIS 35360 (D.N.J. Apr. 30, 2008). The court ruled that service by publication would be inadequate because, even if the plaintiff had been unsuccessful in its attempts to locate the defendant in Alabama, service by publication in a newspaper in New Jersey would not guarantee that the defendant would likely receive notice. Such service would thus not comport with due process and "traditional notions of fair play and substantial justice." *Id.,* 2008 WL 1925293, at *4, 2008 U.S. Dist. LEXIS 35360, at *12 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The court went on to observe that the plaintiff had not made an adequate showing that it had exhausted efforts to locate the defendant or used other means to notify the defendant of the pendency of the action. *Id.,* 2008 WL 1925293, at *3–4, 2008 U.S. Dist. LEXIS 35360, at *10–11. The court credited the plaintiff's general claim that it had conducted computer "background searches" and had twice attempted service on the defendant at the address where he had been last known to live, but found those efforts to locate the defendant inadequate because the plaintiff had not indicated whether it had reviewed publicly available databases, tax records, voting roles, criminal history records, credit records, telephone directories, divorce or death records, or conducted Internet inquiries. *Id.,* 2008 WL 1925293, at *3, 2008 U.S. Dist. LEXIS 35360, at *10.

[¶ 29] In another U.S. District Court case, with facts similar to this case, the court refused a request for service by publication. *Duarte v. Freeland,* 2008 WL 683427, at *1, 2008 U.S. Dist. LEXIS 30800, at *1 (N.D.Cal. Mar. 7, 2008). *Duarte* involved an assault by two student defendants on a student plaintiff. At the time of the action, all parties had left the Oakland, California school district. The plaintiff had difficulty locating the defendants and sought an order for service by publication. *Id.,* 2008 WL 683427, at *1, 2008 U.S. Dist. LEXIS 30800, at *2. The affidavits in support of the motion for service by publication noted that professional process servers had undertaken several unsuccessful efforts to locate and serve the defendants, and that the plaintiff conducted a search through a web service that provided searches for records on individuals, again without success. *Id.,* 2008 WL 683427, at *2–3, *3, 2008 U.S. Dist. LEXIS 30800, at *5–6, 8–9. The court indicated that, because of the passage of time, the plaintiff should once again attempt to locate the defendants by taking such steps as searching city or telephone directories in the Bay area; attempting to contact the defendants' parents, whose contact information might be available through school district records, and who might provide the defendant's location; and calling telephone numbers supplied by the school district. *Id.,* 2008 WL 683427, at *3–4, 2008 U.S. Dist. LEXIS 30800 at *10–11. Because the plaintiffs had not utilized these and other means to locate the defendants, the court denied the motion for service by publication, concluding that such service should be permitted only as a last resort. *Id.,* 2008 WL 683427, at *3–4, 2008 U.S. Dist. LEXIS 30800, at *11; *see also Cooper v. Commonwealth Title of Ariz.,* 15 Ariz.App. 560, 489 P.2d 1262, 1266 (1971) (holding that plaintiffs must make "certain minimum efforts" to show due diligence in the personal service of process, including such efforts as checking telephone listings, county voting lists, county assessor's rec-

ords, utility companies, the city directory, possible forwarding addresses, and speaking with neighbors before a court could grant notice by publication).

[¶ 30] The plaintiff's efforts to locate Deacon in this case, although made in good faith, were not as exhaustive as the efforts found inadequate in *Duarte*. In both cases, there were attempts by process servers to serve process on the defendant, and both plaintiffs engaged an identified Internet web searching service. *Duarte*, 2008 WL 683427, at *2–3, 3, 2008 U.S. Dist. LEXIS 30800, at *5–6, 9. Moreover, Gaeth requested publication of service in one state, in a county with which the defendant had no known contacts, when he knew the defendant was most likely residing in another state, a method of service found inadequate in *Holladay*. Finally, although both Gaeth and Deacon had been students at Colby where the alleged incident giving rise to this litigation took place, whether Gaeth fully utilized information available at the college in an attempt to locate relatives who might know Deacon's whereabouts is not clear.

[¶ 31] The circumstances of this case are unique in that both parties had a connection to Colby, but service was ordered in a weekly newspaper in a county to which only Gaeth had a connection, and Deacon was last known to be a resident in a different State. We are forced to conclude that service by publication was not reasonably calculated to notify the defendant of the action and, although technically compliant with the rules, did not meet the requirements of due process.

[¶ 32] Accordingly, because Deacon was denied due process, the court should have granted his motion for relief from judgment.

The entry is:

Judgment vacated. Remanded to Superior Court for further proceedings consistent with this opinion.